1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF CALIFORNIA

7
                                    )    1:01-cv-06502  OWW LJO
8   BENNY ROUNDTREE, JR.,           )
                                    )    MEMORANDUM DECISION AND
9              Plaintiff,           )    ORDER RE DEFENDANTS' MOTION
                                    )    TO DISMISS PURSUANT TO FED.
10        v.                        )    R. CIV. P. 12(b).
                                    )
11  WARDEN DERRAL ADAMS; EDGAR      )
    CASTILLO, M.D.;                 )
12  MTA F.C. SCHUMACHER;            )
    CHIEF DEPUTY WARDEN T. VAUGHN;  )
13  C/O WATKINS; SGT. FOUCH;        )
    SGT. YOUNG; C/O RODRIGUEZ III;  )
14  LT. WESTPHAL; MTA RAMIREZ;      )
    MTA BUNKER; MTA HEGGE;          )
15  C/O A. PETERSEN;                )
    DR. M. FRIEDMAN;                )
16  ASSOCIATE WARDEN HILL;          )
    LT. SCHUMACHER; L.G. SCHWIMMER; )
17  DOES 1-20,                      )
                                    )
18                                  )
                                    )
19             Defendants.          )
                                    )
    _____ )
20

21

22               I.    __INTRODUCTION__

23

24      Defendants Sergeant Young, Sergeant Fouch, Correctional

25  Officer Rodriguez, Correctional Officer Wadkins,[1] Warden Adams,

26  _____

27      [1] Defendant Wadkins' name is misspelled as "Watkins" in the
28  First Amended Complaint. (*See* Doc. 66, Def.'s Mem. 2, n. 1).

                              1

1 M.T.A. F.C. Schumacher,[2] Dr. Friedman, Associate Warden Hill,

2 M.T.A. Hegge, M.T.A. Ramirez, and Dr. Edgar Castillo[3]

3 (collectively, "Defendants") move to dismiss the civil rights

4 complaint of Plaintiff Benny Roundtree ("Plaintiff"), a state

5 prisoner in the custody of the California Department of

6 Corrections.  Defendants[4] move to dismiss on the grounds that

7 Plaintiff failed to exhaust his administrative remedies before

8 bringing suit.

9

10 ## II.  **PROCEDURAL HISTORY**

11

12 This civil rights action arises out of Defendants' alleged

13 refusal, over the course of about five years, to provide

14 Plaintiff, a state prisoner, with foot braces and special shoes

15 that were prescribed to him for an injury to his right ankle.

16 (*See* Doc. 34, First Am. Compl. ¶ 8).  Plaintiff filed his

17 original complaint *pro se* about three and a half years ago, on

18 November 19, 2001.  (Doc. 1, Compl.).  The magistrate judge

19 ────────────

20 [2] In addition to M.T.A. F.C. Schumacher, Plaintiff also

21 names "Lt. Schumacher" as a defendant.  Defendants assert that
Lt. Schumacher has not yet been served.  (*See* Doc. 66, Def.'s

22 Mem. 2, n. 2).

23 [3] Dr. Castillo joined the Motion to Dismiss by stipulation
on August 3, 2004.  (*See* Doc. 76).

24

25 [4] An Order to Show Cause why the remaining Defendants (i.e.,
Petersen, Schwimmer, Vaughn, Westpal, Bunker, and Lt. Schumacher)

26 should not be dismissed issued on July 2, 2004.  (Doc. 72).
Plaintiff responded on July 29, 2004, and requested more time to

27 respond.  (Doc. 75).  Plaintiff filed a supplemental response on
August 20, 2004.  (Doc. 80).  Plaintiff requested further time to

28 respond.  The status of these Defendants is still not clear.

2

ordered the court to request that an attorney review the complaint and exhibits and notify the court whether he or she is interested in representing plaintiff. (Doc. 10, Order, filed August 20, 2002). After court correspondence with a number of different potential attorneys over the course of approximately one year, counsel was appointed for Plaintiff on September 3, 2003. (Doc. 27, Order). Plaintiff, with the assistance of counsel, filed the First Amended Complaint on March 21, 2004. (Doc. 34, First Am. Compl.). Plaintiff brings four causes of action against Defendants: (1) Violation of 42 U.S.C. § 1983 for depriving Plaintiff, under color of law, of rights secured by the Eighth and Fourteenth Amendments; (2) Breach of Mandatory Duty of Cal. Penal Code §§ 2650-2657; (3) Intentional Infliction of Emotional Distress; and (4) Violation of *Armstrong* Remedial Plan.

Defendants moved to dismiss the First Amended Complaint on June 21, 2004. (Doc. 65; Notice of Motion; Doc. 66, Def.'s Mem.). Plaintiff's attorney requested more time to respond to the Motion to Dismiss on August 9, 2004. (Doc. 78). The deadlines to respond and the date of oral argument were continued several times. Plaintiff finally filed opposition to Defendants' Motion to Dismiss on May 4, 2005. (Doc. 97, Pl.'s Opp.). Oral argument was scheduled for June 6, 2005. (Docs. 94, 95). Plaintiff requests leave to amend the First Amended Complaint and has also filed a Second Amended Complaint. (Doc. 96, [Proposed] Second Am. Compl., filed May 4, 2005). Defendants replied. (Doc. 99, Def.'s Reply, filed May 18, 2005). Plaintiff submitted a document titled "Response to Defendants' Reply Re: Motion to //

**3**

1    Dismiss" on June 1, 2005.[5]  (Doc. 100, Pl.'s Response).

2    Oral argument was heard on June 6, 2005.  Patience Milrod,

3    Esq., appeared on behalf of Plaintiff.  Kelli Marie Hammond,

4    Esq., appeared on behalf of Defendants.

5

6    ### III.    SUMMARY OF PLEADINGS

7

8    ### A.    Plaintiff's First Set of Administrative Appeals.

9    Plaintiff's first set of administrative appeals relates to

10   Plaintiff's allegation that, from October 1998 to June 28, 2001,

11   Defendants refused to provide him braces and shoes.  Plaintiff

12   was prescribed soft shoes in October 1998.  His family sent them,

13   and staff at Corcoran refused to allow him to have them.  Further

14   delay led to deterioration of his left ankle, resulting in severe

15   and constant pain and limitation of his daily activities.

16   Plaintiff filed a grievance and a series of appeals in accordance

17   with the prison's administrative appeals process.

18   First, in 1998, Plaintiff submitted an informal grievance on

19   a standard "Inmate/Parolee Appeal Form 602."  (Doc. 97, Pl.'s

20   Opp. Ex. 1; Doc. 66, Def.'s Mem. Ex. A).  The "date submitted" on

21   the form is November 28, 1998.  The "date received" on the form

22

23        [5] The only briefs authorized by the Local Rules for the
     Eastern District of California ("Local Rules") are the Motion,
24   Opposition, and Reply.  *See* Local Rule 78-230.  Plaintiff's
     "Response" was filed in violation of the Local Rules.
25   Defendants, however, did not object to Plaintiff's "Response."
     Also, considering the lengthy period of time between the filing
26   of the original motion and the opposition and reply (almost one
     year), and that Defendants raised arguments in their reply that
27   they did not raise in their original motion (*see* Doc. 99, Def.'s
     Reply 7-8), Plaintiff's "Response" will be considered.
28

is December 4, 1998.  Plaintiff complains on the form that on October 30, 1998, he was prescribed soft shoes after an examination by a physician, but that he had not yet been issued the soft shoes:

> I was examine[d] by Doctor Deering concerning a sever[e] foot and ankle problem.  The Doctor determined that I should be wearing a special shoe.  He Doctor [sic] Deering wrote a physcian [sic] and for a special shoe chrono, which I haven't received?  Therefore I was denied soft shoes by the laundry staff because I had no paperwork to back my claim, I was also [sic] ankle support high top shoes because I had no paperwork to back my claim.  It has become obvious that I cannot and will not receive these items until I present a chrono.

(*Id.*).  The action Plaintiff requested in response to his grievance was to receive the "chrono" that had allegedly already been issued by Dr. Deering.  (*Id.*).  Plaintiff's informal grievance request was denied on March 19, 1999.  The 602 form states, under a section titled "Staff Response," that Plaintiff "need[s] to be seen by M.D. for evaluation regarding soft shoe chrono."  (*Id.*).

Second, in response to the rejection of the grievance request, Plaintiff brought a "formal" appeal.  (*See id.*).  The 602 form is a pre-printed form that has a section for inmates to file several formal appeals.  An inmate can explain on this section why he or she is dissatisfied with these decisions at the lower levels.  Plaintiff wrote in the First Formal Appeal section of the 602 that he had already been evaluated by Dr. Deering and that a chrono already existed in his medical records:

> I've already been to the Doctor on 10/30/98 and he order [sic] my chrono.  I had a full evaluation.  Therefore the above statement does not remedy my problem, or explain the time frame from the medial records received this appeal to the time they sent it back to me.

**5**

(*Id.*).  Plaintiff seems to be complaining about the length of time (i.e., over 3 months) it took the prison to rule on his complaint.  The First Formal Appeal is dated March 28, 1999, and is dated "received" March 29, 1999.  Plaintiff's First Formal Appeal was granted in part on May 5, 1999.  The section titled "Reviewer's Action" is signed by Dr. Deering and states that (1) there was no custody escort for Plaintiff to take him to the orthotic clinic and that Plaintiff's appointment was rescheduled; (2) that Dr. Deering reordered Plaintiff's chrono to wear soft shoes until Plaintiff can be seen by orthotics; and (3) that Dr. Deering requested that Plaintiff be issued soft shoes and support high tops.

Third, Plaintiff appealed the decision from the First Formal Appeal on May 12, 1999.  As with the first appeal, the section provided for an inmate's Second Formal Appeal appears on the pre-printed 602 form.  Plaintiff wrote on the form that he had not been issued his shoes and that he seeks a Director's Review (i.e., the third and final level of review):

> Even though Dr. Deering reordered all these above I have not received any of my chronos or ankle support-high top soft shoes [illegible] examinations keep being rescheduled my ankle is causing pain.  I seek director's review.

Plaintiff's Second Appeal appears to be dated received either on May 12, 1999, or on June 21, 1999.  The 602 form states that Plaintiff's Second Appeal was granted in part.  The decision is dated September 23, 1999.  The action to be taken is not clear on the form.

Fourth, Plaintiff brought an appeal to the third and final Director's Level on September 9, 1999.  In it, Plaintiff states:

**6**

It has become blatantly obvious that the medical staff here at SATF/Corcoran don't adhere to even Dr. Deering's requests.  I have not been issued any of the above orders.  However, I was finally escorted to the Clinic for x-ray, and [sic] which time they x-rayed the wrong ankle.  I repeatedly told the [sic] it was the wrong ankle.  After 1YR Im [sic] still waiting??

(Doc. 1, Compl. Ex. A).[6]  Plaintiff's Director's Level Appeal was granted in full.  The Director's Level Appeal decision is dated January 11, 2000, and states in relevant part:

Review of the appeal documentation and appellant's medical records indicate that administrative procedures have not been followed in completing CDC 128-C chronos ordered by treating physicians.  There appears [sic] to have been delays and altogether failures to complete the chronos and ensuring that the appellant received them.

Case conference with Dr. E. Castillo, Chief Medical Officer (SMO), SATF, revealed that the appellant was evaluated by the orthotic specialist, Dr. McKillup, on November 19, 1999, who issued an order for special boots and a plastic brace for appellant's foot and ankle.  Nothing has been done to follow through with this order.

*     *     *

The institution shall immediately carry out the orders of Dr. McKillup, Orthotist, on November 19, 1999, and ensure that the appellant receives the appropriate footwear and orthotic prostheses.

The Director's Level Appeal decision also states that "[t]his issue was discussed with Dr. E. Castillo, CMO, SATF, and the office of Mr. T. Vaughn, Chief Deputy Warden.

Finally, in August 2000, Plaintiff received the orthotic braces, although he did not receive the special shoes, without which the braces were useless.  The braces were confiscated in December 2000 or January 2001 when Plaintiff was transferred to a

---

[6] The 602 attached to the First Amended Complaint does not contain this section of text.

**7**

different unit within the Corcoran facility.  Thus Plaintiff was unable to be fitted for special shoes in January 2001 because his braces were "in lockup."  He never got them back, and Plaintiff was transferred to the Soledad facility in March 2001 without them.  Plaintiff also alleges that Warden Adams, Defendant Vaughn, and Lt. Schumacher transferred him to the Soledad facility in retaliation for his complaints.  (Doc. 34, First Am. Compl. ¶ 15).  Efforts by staff at Soledad to secure the braces from staff at Corcoran were unavailing.

Plaintiff then attempted to secure proper footwear and braces at Soledad.  On March 24, 2001, Plaintiff submitted a CDC 1824 Reasonable Modification or Accommodation Request, CDC log # 01-00923.  (*See* Doc. 97, Pl.'s Opp. 4; Ex. 5).  Plaintiff was issued braces on May 24, 2001, and received the necessary orthopedic shoes on June 28, 2001.

The first appeals procedure relates to Plaintiff's allegation that, from October 1998 until June 28, 2001, Defendants refused to provide him braces and shoes.  (*See* Doc. 97, Pl.'s Opp. 2).

### B.   Plaintiff's Original Complaint and his State Habeas Petition.

Plaintiff filed his original complaint *pro se* on November 19, 2001.  (Doc. 1, Compl.).  Before filing his complaint in federal court, Plaintiff filed a December 2000 Petition for Writ of Habeas Corpus in the Superior Court of California, County of Kings.  (*Id*. at Ex. D).  That petition appears to have been rendered moot by the issuance of Plaintiff's shoes and braces in

**8**

1  June 2001.  (*See id*. at Ex. G, Order for Further Responses to

2  Petition for Writ of Habeas Corpus).[7]

3        Plaintiff's original federal complaint sought monetary

4  damages for pain and suffering and punitive damages for medical

5  staff's deliberate indifference to his medical needs.  (*Id*. at

6  3).  In the section of the complaint titled "Statement of Claim,"

7  Plaintiff states that, on November 19, 1999, he was examined by

8  Foot Specialist Dr. McKillups and that nothing was done to carry

9  out the orders of Dr. Deering and Dr. McKillups.  Plaintiff

10 alleges that on November 11, 2000, he was interviewed by CDC

11 Appeal Examiner C. Hollis.  (*Id*.).  Examiner Hollis and Plaintiff

12 went to the MTA Office to ask why nothing had been done to carry

13 out the orders of Dr. Killups and Dr. Deering.  Senior MTA F.C.

14 Schumacher told Mr. Hollis and Plaintiff that she would ensure

15 the physicians' orders were fulfilled.  Plaintiff goes on to

16 allege that F.C. Schumacher never did so, and that his pain and

17 limping continued and worsened.  Plaintiff also alleges that Mr.

18 Hollis spoke with Chief Deputy Warden T. Vaughn regarding the

19

20        [7] Judge Bissig states in this order as follows:

21              If the medically prescribed footwear and orthopedic
22              appliances have in fact been supplied to petitioner,
                there may be nothing to decide.  Petitioner and
23              respondent are each ordered to file a further short and
                focused supplemental response or traverse that shall
24              include such declarations as are necessary to address
                the single issue that the court is inquiring about.
25              The supplemental filings herein requested shall be on
                file not later than July 1, 2001.  If medically
26              prescribed orthopedic shoes and related appliances have
                in fact been delivered to and have been fitted to
27              petitioner's feet by that date, it is the court's
                intention to dismiss this petition as moot.
28

**9**

1  matter, but still received no relief.

2

3        **C.   Plaintiff's Second Set of Administrative Appeals.**

4        On August 13, 2002, the footwear and braces issued to

5  Plaintiff in June 2001 were confiscated in a cell search.  (Doc.

6  34, First Am. Compl. ¶ 18).  They were never found, and Plaintiff

7  began again the process of attempting to get staff's attention to

8  have his feet measured for new braces and boots.  On August 14,

9  2002, Plaintiff filed another informal grievance on a CDC 602

10  Inmate Appeal Form, CDC log # 03-00242.  The informal grievance

11  is dated "received on November 12, 2002."  The informal grievance

12  was granted in full at the informal level.  The First Level of

13  Appeal is stamped "BYPASS."  The Second Level of Appeal is also

14  stamped "BYPASS," although the 602 form also appears to state

15  that the Second Level Appeal was granted in full on February 13,

16  2003.  The 602 form attaches a letter that states in relevant

17  part:  "[Y]our 602 appeal is GRANTED at the Second Level of

18  Review.  You be [sic] provided with a replacement pair of

19  orthopedic boots at no cost to you."  (Doc. 97, Pl.'s Opp.

20  Ex. 6).

21        Defendant Hill was ordered to provide Plaintiff with

22  replacements no later than March 14, 2003.  (Doc. 34, First Am.

23  Compl. ¶ 19).  The modification order was re-sent on March 17,

24  March 25, April 1, May 19, June 30, July 28, and September 26,

25  2003.  Plaintiff alleges that Defendants Friedman, Hill, and

26  Schwimmer, failed to comply with the order, depriving him of his

27  constitutional rights.  Plaintiff was finally provided with shoes

28  and braces about ten months later, on December 27, 2003.  (*See*

**10**

Doc. 96, [Proposed] Second Am. Compl. ¶ 31).  The allegations regarding the events that are the subject of the second set of administrative appeals appears in the First Amended Complaint, which was filed by Plaintiff, with the assistance of newly-appointed counsel, on March 31, 2004.

## IV.   <u>LEGAL STANDARDS</u>

### A.   <u>Motion to Dismiss for Failure to Exhaust Administrative Remedies Pursuant to Fed. R. Civ. P. 12(b).</u>

Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to the "non-enumerated" provisions of Fed. R. Civ. P. 12(b) on the ground that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a).  This section of the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before bringing suit challenging prison conditions under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

24 U.S.C. § 1997e(a).

In the Ninth Circuit, "failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  Defendants have properly brought their motion pursuant to a non-enumerated

1  provision of Rule 12(b).

2      There is no pleading requirement under § 1997e(a).  *Id*.

3  Plaintiff is not required to plead and prove exhaustion of

4  administrative remedies.  *Id*.  Defendants have the burden to

5  raise and prove the absence of exhaustion.  *Id*.  The policy

6  behind this requirement is that "it is considerably easier for a

7  prison administrator to show a failure to exhaust than it is for

8  a prisoner to demonstrate exhaustion."  *Id*. (quoting *Ray v.*

9  *Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

10     "In ruling on an unenumerated Rule 12(b) motion to dismiss

11  for failure to exhaust, 'the court may look beyond the pleadings

12  and decide disputed issues of fact' by, for example, considering

13  affidavits submitted by the parties."  *Hazleton v. Alameida*, 358

14  F. Supp. 2d 926, 928 (C.D. Cal. 2005) (quoting *Wyatt*, 315 F.3d at

15  1119-20)).  Generally, on a motion to dismiss, a court may

16  consider two types of "extrinsic" material.  First, "a court may

17  consider material which is properly submitted as part of the

18  complaint on a motion to dismiss without converting the motion to

19  dismiss into a motion for summary judgment."  *Lee v. City of Los*

20  *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations

21  and citations omitted).  A court may even consider materials not

22  physically attached to the complaint if their authenticity is not

23  contested and the complaint necessarily relies on them.  *Id*.

24  Second, a court may take judicial notice of matters of public

25  record under Fed. R. Evid. 201.  *Id*.  For example, matters of

26  public record may be considered, including pleadings, orders and

27  other papers filed with the court or records of administrative

28  bodies.  *See id*.  Conclusions of law, conclusory allegations,

**12**

1  unreasonable inferences, or unwarranted deductions of fact need

2  not be accepted.  *See Western Mining Council v. Watt*, 643 F.2d

3  618, 624 (9th Cir. 1981).

4

5      **B.   The Exhaustion Requirement and the California State**
       **Inmate Administrative Appeals Process.**

6

7      The PLRA requires that an inmate exhaust all administrative

8  remedies before bringing suit.  42 U.S.C. § 1997e.  The

9  exhaustion requirement is mandatory.  *McKinney v. Carey*, 311 F.3d

10  1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S.

11  731, 741 (2001).  "The PLRA's exhaustion requirement applies to

12  all inmate suits about prison life, whether they involve general

13  circumstances or particular episodes, and whether they allege

14  excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S.

15  516, 532 (2002).

16      According to the Ninth Circuit, there are two principal

17  policies behind the administrative exhaustion rule:

18          The first is to protect an administrative agency's authority
           by giving the agency the first opportunity to resolve a
19          controversy before a court intervenes in the dispute.
           [citation] The second is to promote judicial efficiency by
20          either resolving the dispute outside of the courts, or by
           producing a factual record that can aide the court in
21          processing a plaintiff's claim.  [citation].

22  *Ngo v. Woodford*, 403 F.3d 620, 624 (9th Cir. 2005).

23      A California state inmate exhausts his administrative

24  remedies within the meaning of the PLRA by pursuing

25  administrative appeal through all appropriate and available

26  levels of review.  *Hazleton*, 358 F. Supp. 2d at 929.  The

27  following four steps are available to California state prisoners:

28      (1) informal resolution, (2) formal written appeal on a CDC

**13**

1
2
602 inmate appeal form, (3) second level appeal to the
institution head or designee, and (4) third level appeal to
the Director of the California Department of Corrections.

3  *Gomez v. Winslow*, 177, F. Supp. 3d 977, 979 (N.D. Cal. 2001)

4  (internal citations omitted); *see* Cal. Code Regs., tit. 15

5  §§ 3084, *et seq*.

6      To fulfill the exhaustion requirement, a prisoner must

7  pursue his appeal through all three levels of administrative

8  appellate review (i.e., to the Director's level), unless further

9  appeal would be futile.  *Brady v. Attygala*, 196 F. Supp. 2d 1016,

10  1021 (C.D. Cal. 2002).  If an appeal at the Second Level is

11  granted, the prisoner need not appeal to the Director's Level.

12  *Id*. at 1021-22.  In *Brady*, the court held that an inmate

13  exhausted his administrative remedies when the prison granted the

14  inmate's appeal at the Second Level.  The Court reasoned that

15  granting the prisoner's appeal constituted the extent of the

16  relief the prison could offer.  *Id*. at 1021-22 (citing Cal. Code

17  Regs. tit. 15 § 3084.5(d)); *accord Clement v. Cal. Dept. of*

18  *Corrections*, 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002) (holding

19  "Plaintiff had received all the relief that the prison

20  administrative appeal could provide" when prison granted both

21  Second Level Appeals and provided colonoscopy and special diet

22  for inmate).

23

24      **C.   California Tort Claims Act.**

25      Under the California Tort Claims Act, no suit for "money or

26  damages" may be brought against a public entity until a written

27  claim has been presented to the public entity and the claim

28  either has been acted upon or is deemed to have been rejected.

**14**

*Hart v. Alameda County,* 76 Cal. App. 4th 766, 778 (Cal. Ct. App. 1999).  The CTCA requires a plaintiff to file a timely tort claim with the public entity; if the claim is not timely, the public entity may reject the claim.

If a claimant fails to timely file a claim with the public entity, and its claim is consequently rejected by the public entity for that reason, courts are without jurisdiction to hear the claimant's cause of action.  *Greyhound Lines, Inc. v. County of Santa Clara*, 187 Cal. App. 3d 480, 487 (1986); *Moyer v. Hook*, 10 Cal. App. 3d 491, 492-3 (Cal. Ct. App. 1970); *Carr v. State of Cal.*, 58 Cal. App. 3d 139, 144-6 (Cal. Ct. App. 1976); *Williams v. Mariposa County Unified Sch. Dist.*, 82 Cal. App. 3d 843, 848-9 (Cal. Ct. App. 1978).  For causes of action for death, personal injury, or injury to personal property, a claimant must file a claim within six months of the accrual of the cause of action. Cal. Gov. Code § 911.2.

The CTCA also permits the filing of an application to file a late claim for certain claims: "[w]hen a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim."  Cal. Gov. Code § 911.4.  The CTCA's six-month limitations period applies to causes of action for death, personal injury, or injury to personal property.  *Id*. at § 911.2.  If a claimant fails to timely file a petition to file a late claim, courts are without jurisdiction to hear the cause of action.

The overall policy of the claim requirements and time

limitations of the California Tort Claims Act include the following: (1) to "give the governmental entity an opportunity to settle just claims before suit is brought;" (2) to "permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim;" and (3) to "avoid multiple suits arising out of the same transaction or occurrence and thus further[] the goal of judicial economy." *Greyhound Lines*, 187 Cal. App. 3d at 487 (quoting *Gehman v. Super. Ct.*, 96 Cal. App. 3d 257, 262, 265 (Cal. Ct. App. 1979), disapproved on other grounds by *Dept. of Transportation v. Super. Ct. ("Frost")*, 26 Cal.3d 744, 759 n. 5 (1980)).

## V.    **ANALYSIS**

### A.    **Whether Plaintiff Exhausted Administrative Remedies.**

Defendants have the burden to raise and prove the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d at 1119.  Plaintiff is not required to plead and prove exhaustion of administrative remedies.  *Id*.  However, both Plaintiff and Defendants have provided copies of documents relating to Plaintiff's grievances and appeals within the prison administrative system.  In ruling on an unenumerated Rule 12(b) motion to dismiss for failure to exhaust administrative remedies, the court may consider materials outside the pleadings if they are properly submitted as part of the complaint or if they are properly judicially noticeable, such as matters of public record.  *See Hazleton*, 358 F. Supp. 2d at

**16**

928; *Lee*, 250 F.3d at 668.

Defendants argue that Plaintiff failed to exhaust his administrative remedies before bringing suit.  First, Defendants argue that the administrative remedies pursued by Plaintiff were deficient because Plaintiff does not name individual Defendants in his grievances and administrative appeals, thus failing to put defendants on notice of Plaintiff's claims against them.  (*See* Doc. 66, Def.'s Mem. 6; Doc. 99, Def.'s Reply 4).  Second, Defendants argue that Plaintiff's grievances and appeals make no mention of the facts giving rise to his retaliation claim against Warden Adams for his transfer from Corcoran to Soledad and against other certain Defendants for having confiscated his shoes and braces in 2003.  Third, Defendants argue that Plaintiff failed to bring a Director's Level appeal regarding the refusal of Defendants to provide Plaintiff with his shoes and braces during the time period after 2001.  (Doc. 66, Def.'s Mem. 7; Doc. 99, Def.'s Reply 6).

### 1.   Sufficiency of Plaintiff's Administrative Appeals Regarding Individual Defendants.

First, Plaintiff correctly argues that Defendants cite no authority supporting their position that each and every prison official who the prisoner intends to sue must be named in the grievance and administrative appeal forms.  (Doc. 100, Pl.'s Response 5-6).  Defendants cite a Sixth Circuit case, *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), in support of their argument.  In *Curry*, the Sixth Circuit "applied a bright line rule that a prisoner must identify every person that he

17

ultimately intends to sue during the administrative process in order to satisfy the exhaustion requirement." *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1130 (S.D. Cal. 2001) (quoting *Curry*, 249 F.3d at 505).

However, Sixth Circuit authority is not binding on this court.  In addition, the holding from *Curry* has been called into question by federal district courts in the Ninth Circuit.  *See Irvin*, 161 F. Supp. 2d at 1135.  The plaintiff in *Irvin* complained that prison officials sprayed pesticides in his prison unit and were deliberately indifferent to his medical needs.  The *Irvin* court held that "[w]ithout further guidance from the Supreme Court or the Ninth Circuit on the standard that should be applied in determining whether prison grievances are factually sufficient to satisfy the exhaustion requirement in section 1997e(a), [it] cannot [be] conclude[d] that petitioner has...failed to exhaust his administrative remedies with respect to [defendants not named in his initial complaint]."  *Id*.  The court based its decision in part on the requirement in the Ninth Circuit that the pleadings of *pro se* prisoner plaintiffs should be construed liberally and be given the benefit of the doubt.  *Id*. (citing *Klingle v. Eikenberry*, 849 F.2d 409, 413 (9th Cir. 1988).  More recently, the Ninth Circuit has held that the complaint of a blind prisoner that he had been denied reasonable accommodation under the Americans With Disabilities Act ("ADA"), should not be dismissed where his administrative appeals form did not name any Defendants who were named in his federal district court complaint.  *Butler v. Adams*, 397 F.3d 1181, 1182-3 (9th Cir. 2005).

The Southern District of California has recently upheld the dismissal of prisoner complaints for failure to exhaust because the plaintiff failed to name the defendants in his administrative complaint. *Ornelas v. G. J. Giurbino*, 358 F. Supp. 2d 955 (S.D. Cal. 2005); *Nichols v. Logan*, 355 F. Supp. 2d 1155 (S.D. Cal. 2004). Both of these cases, however, are distinguishable. Those cases involved allegations of single, isolated incidents of excessive force. Here, as in *Irvin*, the allegations relate to ongoing deprivations of medical accommodation.

Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to name all individual defendants on the grievance and appeals forms is **DENIED**.

### 2.   Sufficiency of Plaintiff's Administrative Appeals Regarding his Retaliation Claim.

Defendants argue that Plaintiff's administrative appeals do not set forth facts giving rise to Plaintiff's retaliation claims based on his transfer from Corcoran to Soledad and on the refusal of Defendants to provide the shoes and braces from March 2003 to December 2003. (Doc. 66, Def.'s Mem. 8). Plaintiff does not appear to contest Defendant's argument. Plaintiff provides no citation to a claim of retaliation in his grievance or appeals forms. Administrative exhaustion is a jurisdictional prerequisite for bringing suit.

Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 retaliation claims is **GRANTED** with leave to amend subject to the applicable statute of limitations.

//

**19**

1
2

### 3. Whether Plaintiff Exhausted All Available Administrative Remedies.

3    Defendants' briefs appear to confuse the two separate
4  substantive violations alleged.  Plaintiff explains that the two
5  violations are: (1) certain Defendants' refusal to provide braces
6  and shoes to Plaintiff from October 1998 through June 2001; and
7  (2) certain Defendants' confiscation of and subsequent refusal to
8  provide braces and shoes from August 2002 to December 2003.  (*See*
9  Doc. 97, Pl.'s Opp. 2; Doc. 100, Pl.'s Response 4).  Plaintiff's
10 first set of administrative appeals relates to the October 1998
11 through June 2001 violation, and Plaintiff's second set of
12 administrative appeals relates to the August 2002 to December
13 2003 violation.  Plaintiff filed his original complaint after the
14 October 1998 through June 2001 violation.  Plaintiff, with the
15 assistance of counsel, filed his First Amended Complaint on March
16 31, 2004, and added the second set of alleged violations.

17    The California inmate grievance and appeals process is set
18 forth in Cal. Code Regs., tit. 15 §§ 3084, *et seq*.  First, the
19 inmate must file an informal appeal whereby "the appellant and
20 staff involved in the action or decision attempt to resolve the
21 grievance informally."[8]  *Id*. at § 3084.5(a).  Second, if the

22

---

23    [8]  There are a number of exceptions to the informal
   grievance requirement, all of which, save one, are not relevant
24 here.  The relevant exception here is an appeal of "[t]he denial
   of disabled inmate requests for reasonable modification or
25 accommodation filed on CDC Form 1824 (1/95), Reasonable
   Modification or Accommodation Request, pursuant to section 3085."
26 Cal. Code Regs, tit. 15 § 2084.5(a)(3)(H).  Plaintiff filed a CDC
   1824 Reasonable Modification or Accommodation Request on March
27 24, 2001.  Defendants argue Plaintiff cannot base his argument
   for exhaustion on the submission of this form.  (doc. 99, Def.'s
28

1 informal grievance is rejected, an inmate may file a First Formal

2 Appeal with the prison's Appeals Coordinator within fifteen

3 working days. *Id*. at §§ 3084.5(b), 3084.6(c). Third, the Second

4 Formal Appeal is brought before the "institution head or regional

5 parole administrator, or their designee." *Id*. at § 3084.5(e)(1).

6 Fourth, the third level appeal is brought before the Director of

7 the Department of Corrections. *Id*. at § 3084.5(e)(2).

8     Here, Plaintiff initiated two separate grievance procedures,

9 outlined in detail above. As to the alleged violations that

10 occurred between October 1998 and June 2001, Plaintiff appealed

11 through the Director's Level. Plaintiff's complaints and

12 grievances were submitted on the preprinted CDC 602 form, as

13 required by California prison regulations and California state

14 law. First, Plaintiff complained informally that Dr. Deering

15 prescribed him soft shoes that he never received. His request

16 was denied. Second, Plaintiff instituted the First Formal Appeal

17 by appealing the denial of his grievance. The First Formal

18 Appeal was granted in part by Dr. Deering, who ordered that shoes

19 and braces be delivered to Plaintiff and that he be scheduled for

20 an orthotic medical examination. Plaintiff appealed this

21 decision to the Second Formal Appeal level when his shoes were

22

23 ───────────────

24 Reply 5). Plaintiff correctly notes that this form is explicitly
recognized by this section of the California Code of Regulations.

25 However, the only argument against exhaustion that Defendants
appear to make regarding the 1824 form is that the 602 is the

26 only form recognized by the Regulations. Defendants do not
appear to argue that Plaintiff failed to comply with the appeals

27 process relating to the 1824 form. The issue whether Plaintiff
exhausted his administrative remedies by filing and/or appealing

28 the 1824 Request Form will therefore not be addressed.

not issued.  This appeal was granted in part.  Plaintiff still received no shoes.  Plaintiff then appealed to the Director's Level, where his appeal was granted in full.  The Director ordered that prison officials carry out the order and that shoes and orthotics be provided to Plaintiff.  The shoes and braces were finally issued in June 2001.

When Plaintiff's shoes and braces were confiscated in August 2002, Plaintiff instituted a second grievance procedure relating to the second set of alleged violations.  First, his informal grievance was granted in full.  It is not clear from the form whether Plaintiff instituted a First Formal Appeal because there are several "BYPASS" stamps on the second page.  However, the form also states that the Second Formal Appeal was granted in full, and a letter is attached to that appeal ordering that new shoes and orthotics be provided to the Plaintiff.  Plaintiff did not appeal this decision to the Director's Level.

Plaintiff has exhausted all administrative remedies relating to his inadequate medical care claim in compliance with Cal. Code Regs., tit. 15 §§ 3084, *et seq*.  Defendants argue that because Plaintiff did not appeal the second set of violations to the Director's Level, his complaint against Defendants who are alleged to have committed the second set of violations (i.e., Defendants Friedman and Hill) should be dismissed.  Defendants are incorrect.  Plaintiff exhausted all available administrative remedies despite that he did not take his appeal to the Director's Level.  Exhaustion of administrative remedies occurs when a prison offers a prisoner all the relief of which it is capable.  *Brady*, 196 F. Supp. 2d at 1021; *Clement*, 220 F. Supp.

**22**

2d at 1106.  A grant of an appeal does not, by virtue of its having been granted, require further appeal.  Once an appeal is granted in full, the process ends.[9]

Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to exhaust administrative remedies is **DENIED**.

### 4.   Plaintiff's claim under the "*Armstrong* Remedial Plan."

Defendants argue for dismissal of Plaintiff's claim under the "*Armstrong* Remedial Plan" because Plaintiff "has not filed a Director's Level Appeal that presented the factual circumstances giving rise to his claim...."  (Doc. 66, Def.'s Mem. 8). Defendants assert that the factual circumstances giving rise to

---

[9]   Defendants' argument that the events giving rise to the second alleged set of violations occurred after the original complaint was filed does not require dismissal of these allegations.  It appears that Plaintiff's First Amended Complaint was filed as a matter of course pursuant to Fed. R. Civ. P. 15(a).  Despite that over two years passed after the filing of the original complaint, no responsive pleading had been filed. However, the First Amended Complaint contains allegations of events that transpired after the original complaint was filed. Fed. R. Civ. P. 15(d) permits such "supplemental pleadings"; however, leave of court is required to add supplemental allegations.  Plaintiff failed to request leave of court to do so and therefore filed the supplemental allegations in the First Amended Complaint in violation of the Federal Rules of Civil Procedure.

However, Plaintiff has now requested leave of the Court to amend the First Amended Complaint.  In addition, Plaintiff points out that filing a new case regarding the second alleged set of violations would be a waste of judicial resources and would not further the goals of judicial economy.  Plaintiff is granted **LEAVE TO AMEND** to add allegations arising out of the alleged set of violations, subject to the applicable statute of limitations.

Plaintiff's claim under the *Armstrong* Remedial Plan include the following:  (1) certain Defendants failed to insure that Plaintiff's receipt of his brace and special shoes was not unreasonably delayed; (2) certain Defendants failed to insure that custody staff knew of Plaintiff's special needs; (3) Defendants were required to establish special procedures for the inspection of his appliances during searches; and (4) Defendants were required to insure that Plaintiff not be deprived of his health care appliances absent a documented safety or security reason or medical determination that the appliances were no longer medically necessary.[10]  (*See* Doc. 66, Def.'s Mem.

---

[10]    Neither party provides any context for or discussion of Plaintiff's claim under the "*Armstrong* Remedial Plan."  Plaintiff attaches to the First Amended Complaint a permanent injunction issued against Gray Davis (as Governor of the State of California), Robert Presely (as Secretary to the California Youth and Adult Corrections Agency), James Nielsen (as Chairman of the California Board of Prison Terms (BPT)), and the BPT, their agents, employees, successors in office and all persons acting in their aid or participating with them, by the U.S. District Court for the Northern District of Illinois in the case *Armstrong v. Davis*, No. C 94-02307 CW.  (*See* Doc. 34, First Am. Compl. Ex. 1). Plaintiff also attaches a document titled "Remedial Plan" which appears to be a set of regulations relating to the California Department of Corrections' Disability Placement Program.  (*Id.* at Ex. 2).  This document states in part:

> The Disability Placement Program (DPP) is the Department's set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities.  The DPP applies to all of the Department's institutions/facilities, all programs that the Department provides or operates, and to all inmates who have disabilities that affect a major life activity whether or not the disabilities impact placement.

(*Id.* at § I.A.).

8 (citing Doc. 34, First Am. Compl. ¶¶ 38, 40-2)).

These factual allegations generally relate to asserted inadequate medical care that are contained in Plaintiffs' administrative appeals forms.  As stated above, Plaintiff's appeals regarding these allegations were granted in full at the Second Level.  No Director's Level Appeal was necessary for the exhaustion requirement to have been met.  *Brady*, 196 F. Supp. 2d at 1021; *Clement*, 220 F. Supp. 2d at 1106.  Defendants' Motion to Dismiss Plaintiffs' claim under the "*Armstrong* Remedial Plan" for failure to exhaust administrative remedies is **DENIED**.  It remains to be determined whether an independent (private right of action) for damages exists under the "*Armstrong* Remedial Plan."

**B.   California Tort Claims Act.**

In their reply, Defendants raise for the first time the argument that Plaintiff's state law claims are barred by the California Tort Claims Act.  Under the California Tort Claims Act, no suit for "money or damages" may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected.  *Hart,* 76 Cal. App. 4th at 778.  If a claimant's claim is consequently rejected by the public entity

Defendants' representations regarding the factual allegations relating to the *Armstrong* Remedial Plan describe the purported purpose of the "*Armstrong* Remedial Plan."  Defendants' representations will be taken as true for the purposes of this motion since Plaintiff does not contest Defendants' representations in his papers.

1  for that reason, courts are without jurisdiction to hear the

2  claimant's cause of action. *Greyhound Lines*, 187 Cal. App. 3d at

3  487; *Moyer*, 10 Cal. App. 3d at 492-3; *Carr*, 58 Cal. App. 3d at

4  144-6; *Williams v. Mariposa County*, 82 Cal. App. 3d at 848-9.

5        In Plaintiff's "Response to Defendants' Reply," Plaintiff's

6  counsel states that she has written to her Plaintiff to determine

7  whether he filed a claim pursuant to the California Tort Claims

8  Act.  At the time of filing the Response (June 1, 2005),

9  Plaintiff's counsel had still not heard back from Plaintiff.

10 Plaintiff's counsel states in the Response that she "will either

11 seek leave to allege the filing and denial of the tort claim, or

12 will file a notice of dismissal of his state law claims pursuant

13 to Fed. R. Civ. P. 41(a)."  (Doc. 100, Pl.'s Response 8-9).

14 Plaintiff's counsel reiterated this intent during the June 6,

15 2005 oral argument.  Defendants' Motion to Dismiss Plaintiff's

16 state law claims for failure to comply with the California Tort

17 Claims Act is **GRANTED** with **LEAVE TO AMEND**.

18

19       **C.   Leave to Amend.**

20       Plaintiff filed a "Second Amended Complaint" on May 4, 2005.

21 Plaintiff added allegations regarding compliance with the PLRA's

22 administrative exhaustion requirement.  However, Defendants argue

23 that Plaintiff filed the Second Amended Complaint in violation of

24 Fed. R. Civ. P. 15(a).  In her response, Plaintiff's counsel

25 concedes that she erroneously filed the proposed complaint

26 without seeking leave to amend from the Court, which is a

27 violation of Fed. R. Civ. P. 15(a).  Plaintiff requests leave to

28 amend in the Response.

**26**

Fed. R. Civ. P. 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."   The propriety of granting a motion for leave to amend is generally determined by analysis of several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

Defendants do not argue that amendment would result in prejudice or undue delay, or that Plaintiff's request for leave to amend is the result of bad faith.   Defendants argue that amendment would be futile.   As explained above, Plaintiff has adequately exhausted administrative remedies.   Amendment of his complaint to allege facts relating to exhaustion would not be futile.   Whether state law claims are viable remains to be seen.

Plaintiff's request for leave to amend is **GRANTED**.

## VI.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's § 1983 claim insofar as it is based on claims of retaliation is **GRANTED** with **LEAVE TO AMEND**;

Defendants' Motion to Dismiss Plaintiff's state law claims for failure to comply with the California Tort Claims Act is **GRANTED** with **LEAVE TO AMEND**;

//

Defendants' Motion to Dismiss Plaintiff's claims on all other grounds is **DENIED.**

Any amended complaint shall be filed within thirty (30) days of electronic service of this order.

**SO ORDERED.**

**DATED: June _23__, 2005.**

**/s/ OLIVER W. WANGER**

_____

**Oliver W. Wanger**
**UNITED STATES DISTRICT JUDGE**

28