IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNY ROUNDTREE, JR. | CASE NO. CV F 01-6502- LJO- SMS |
| Plaintiff, | |
| vs. | **ORDER ON MOTION TO ENFORCE ORAL SETTLEMENT AGREEMENT)** (Doc. 200) |
| DERRAL ADAMS, Warden, et al., | |
| Defendants. | |
| _____/ | |

By notice on March 11, 2009, defendants Derral G. Adams, Edgar Castillo, M. Friedman, Warden Daniel Hill, Schumacher, Hegge, Ramirez, Rodriguez, Young, Fouch, Wadkins, and Bunker ("defendants")[1] move to enforce an oral settlement agreement against plaintiff Benny Roundtree ("Mr. Roundtree"). Plaintiff Benny Roundtree ("Mr. Roundtree") opposed the motion on March 17, 2009. Defendants replied on March 19, 2009. This matter was heard on March 23, 2009 in Courtroom 4 (LJO). Deputy Attorney General Kelli M. Hammond and Shannon Hewitt appeared on behalf of defendants. Patience Milrod appeared on behalf of Mr. Roundtree. For the reasons stated on the record, incorporated herein, this Court DENIES defendants' motion to enforce the oral settlement agreement.

---

[1] Defendant Bunker, represented by separate counsel, appeared at the settlement conference in question and joined in this motion on March 12, 2009 and joined in this motion. Defendant California Department of Corrections and Rehabilitation ("CDCR"), represented by separate counsel, also appeared at the settlement conference.

1

# BACKGROUND

Mr. Roundtree, a state prisoner, commenced this action on November 19, 2001 against defendants (correctional officers and the warden) and the California Department of Corrections and Rehabilitation ("CDCR"). On August 13, 2003, Mr. Roundtree's counsel Patience Milrod ("Ms. Milrod") accepted an appointment to represent him. Mr. Roundtree proceeds on his third amended Complaint ("TAC") against defendants for events arising over several years and taking place at two correctional facilities in California. Mr. Roundtree alleges, *inter alia*, that despite a prescription for orthopedic shoes and braces, defendants refused to allow him to be fitted for the shoes, confiscated the shoes and braces, and failed to returned the shoes and braces.

In August 2008, settlement discussions began between Mr. Roundtree and defendants. Settlement discussions between the parties and United States Magistrate Judge Sandra M. Snyder ("Judge Snyder") took place between August and December 2008. Judge Snyder organized to have the parties meet for a settlement conference with United States Magistrate Judge Nandor J. Vadas ("Judge Vadas") on January 20, 2009.

On January 20, 2009, defendants' counsel, Deputy Attorney General Kelli M. Hammond ("Ms. Hammond"), Mr. Roundtree, Ms. Milrod, counsel for Bunker, and counsel for CDCR met for a settlement conference. Defendants move to enforce an agreement that they allege the parties entered into at the January 20, 2009 settlement conference. Mr. Roundtree contends that he did not authorize Ms. Milrod to settle on his behalf and did not intend to be bound absent a written settlement agreement.

## Defendants' Arguments

Defendants contend that after hours of negotiations, the parties agreed to the terms of the settlement, subject to review of the language by the Receiver. Defendants allege that the terms of the agreement were written down by Judge Vadas and the parties agreed to memorialize their agreement in a written document. In support of the position that an enforceable oral settlement agreement was agreed upon by the parties, defendants offer the following:

On January 22, 2009, Ms. Hammond sent an email to Ms. Milrod and CDCR's counsel that reads: "The Receiver has agreed to the proposed settlement–but for a few filings, looks like this case is done[.]"

In a January 26, 2009 email, Judge Vadas wrote: "Counsel: Here is the settlement statement as agreed upon by the parties last week...I will inform the DJ in the EDC that the matter has settled." Judge Vadas' email includes the following agreed-upon terms:

>    1. CDRC will agree to exercise their best efforts to provide plaintiff Benny Roundtree, Jr. With currently prescribed orthotics and boots in a timely manner. If a different orthotic or boot is prescribed in the future, CDC agrees to use their best efforts to procure the newly prescribed orthotic or boot in a timely manner.
>
>    2. Heath care appliances shall be documented as property of the inmate and appropriately identified as such, in accord with departmental and institutional policy; however, they shall not be included in the volume limit for personal property in CCR, Title 15, Section 3190. No inmate shall be deprived of a heath care appliance that was in the inmates possession upon entry into the CDC system or was properly obtained while in CDC custody, unless for documented safety reasons or a Department physician or dentist determines that the appliance is no longer medically necessary or appropriate. Possession of health care appliances in Special Placement Housing is governed by CCR, Title 15, Section 3380.20.
>
>    3. The parties agree to refer any disputes arising out of this settlement agreement to Magistrate Judge Vadas for further mediation for a period not to exceed one year from the signing of the motion to dismiss this lawsuit.

In a February 17, 2009 email, Ms. Hammond sent Ms. Milrod "the draft of the settlement agreement" in which she advised: "[P]lease get out your red pen, make any changes, and get it back to me." The "Terms and Conditions" section of the draft settlement agreement includes the three terms outlined in Judge Vadas' email, as well as two additional terms: "1. Plaintiff shall dismiss this case with prejudice, sign this agreement and file the dismissal with the Court; and 5. The parties shall bear their own costs and attorneys' fees."

On February 18, 2009, Judge Vadas filed an order to inform this Court that a "settlement conference in this matter was held on January 20, 2009" and that the "case has been completely settled." This Court followed with an Order After Settlement and ordered the parties to file dispositive papers no later than March 18, 2009.

Ms. Milrod responded to Ms. Hammond's February 17, 2009 on February 22, 2009. In the email response, Ms. Milrod did not object to the material terms of the agreement. Ms. Milrod edited the proposed settlement agreement by removing reference to a waiver of future claims and adding a signature line for Mr. Roundtree.

///

**Plaintiffs Opposition**

Mr. Roundtree argues that the only evidence before the Court is that Mr. Roundtree did not authorize counsel to settle the case for him and did not intend to be bound by the proposed agreement until he saw it in writing and could sign it. In support of his position, Mr. Roundtree relies on the following:

The first provision of the Terms and Conditions of the draft settlement agreement requires that "Plaintiff shall sign this Agreement." Under Representations and Warranties, the draft settlement agreement anticipates signatures in counterpart and provides for "no oral modifications or waiver."

Ms. Milrod declares that at no time did she represent to Judge Vadas or to the defendants that she was authorized to settlement the case on Mr. Roundtree's behalf. Ms. Milrod submits that she did not have the express authority from her client to settlement the case. Moreover, Ms. Milrod contends that she would not have advised Mr. Roundtree to agree to an oral settlement of this case because she would have anticipated that material corrections (such as excising a proposed release of future as well as existing claims would likely be necessary in the finalizing stage.

Ms. Milrod further declares that Mr. Roundtree was not present during the settlement negotiations that led to the proposed agreement. Mr. Roundtree was confined in a cell during the discussions, from which he could neither see nor hear any proceedings. From time to time, Judge Vadas and/or Ms. Milrod would leave the conference room to speak with Mr. Roundtree.

According to Ms. Milrod, at all times during the conferences with Judge Vadas, Mr. Roundtree expressed his fear that CDCR would fail and refuse to comply with the proposed settlement and would retaliate against him for having brought this action. Mr. Roundtree mentioned, as one basis for his fear, that he was roused without notice at 3:00 a.m. and told he could not pack and inventory his property before he was transported to the settlement conference. Upon his return, Mr. Roundtree found that numerous items of his property were missing and have not been returned. Additionally, Mr. Roundtree was housed in Administrative Segregation upon his returned.

Ms. Milrod asserts that Mr. Roundtree did repudiate the settlement agreement at the first opportunity. Ms. Milrod points out that Mr. Roundtree has no access to email and was unaware of the email exchanges relied upon by Ms. Hammond.

**Defendants' Reply**

Defendants contend that all parties, either by or through counsel, agreed to the terms of the settlement agreement during the settlement conference as set forth in Judge Vadas' January 26, 2009 email. Defendants assert that Ms. Milrod represented that Mr. Roundtree agreed to all of the terms and conditions of the agreement at the settlement conference. Defendants maintain that all parties agreed to memorialize the agreement in writing as a formality but that the settlement agreement was complete on January 20, 2009. Defendants allege that no party stated that he or she would be bound only upon the execution of a writing. Defendants claim that it was not until Mr. Roundtree's opposition was filed that defendants learned that Ms. Milrod claimed that she did not have authority to settle this matter during the settlement conference.

Defendants argue that the "objective intent" that the parties settled, and the objective evidence demonstrates that Ms. Milrod had the authority on behalf of Mr. Roundtree. Defendants point out that Judge Vadas' order indicates that plaintiff and Ms. Milrod participated in the proceeding, "each possessing the requisite settlement authority." Judge Vadas' order further has a check next to the following statement: "The case has been completely settled." Defendants recall that Judge Vadas' January 26, 2009 email reads that the "parties agreed upon" the terms and that the case "settled." Defendants further point out that in Ms. Milrod's March 9, 2009 email to this Court, Ms. Milrod wrote: "We are in receipt of your order...issued in light of Judge Vadas' report on what we all believed had been a successful settlement conference."

**Procedural History of Current Motion**

This action is set for an April 20, 2009 jury trial. After Judge Vadas' February 18, 2009 order regarding settlement, this Court ordered the parties to file dispositive papers no later than March 18, 2009. On March 6, 2009, Ms. Milrod wrote an email directly to this Court. Ms. Milrod informed the Court that Mr. Roundtree's "already meager confidence in CDCR's good faith is entirely gone" because Mr. Roundtree alleges that a substantial portion of his property was "lost" when he returned to his home prison after the settlement conference." Because of this incident, Ms. Roundtree "does not now believe CDCR will comply with the settlement agreement." Ms. Milrod explains that Mr. Roundtree "does not feel comfortable signing the settlement agreement with this additional problem both so pressing and so

5

recent." Thereafter, Ms. Milrod moved to continue the April 20, 2009 trial and amend the scheduling order (Doc. 197). Ms. Hammond moved to enforce the settlement agreement. (Doc. 200). This Court agreed to hear both motions on an expedited schedule. (Doc. 199).

**DISCUSSION**

A federal court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). The parties submit that according to federal standards, there are two requirements for an oral agreement to be enforceable. First, the agreement must be complete. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Second, both parties must have either agreed to be bound by the terms of the settlement, or have authorized their respective counsel to settle the dispute. *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977). The parties both acknowledge, however, that the "construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Commer. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). *See also, Harrop*, 550 F.2d at 1145 (applying California law).[2] Accordingly, this Court applies California law regarding the formation and interpretation of contracts.

The parties reached an oral agreement with the expectation that a written agreement will follow. In such circumstances:

> two possibilities exist: Negotiations can result in a binding oral contract when all of the terms are definitely understood, even though the parties intend to later execute a formal writing. Alternatively, where the parties understood that the proposed agreement is not complete until reduced to formal writing and signed, no binding contract results until this is done.

*Khajavi v. Feather River Anesthesia Medical Group*, 84 Cal. App. 4th 32, 62 (2000). Concerning the first possibility, "if the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement."*Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App.

---

[2] The parties contemplated that California law would apply to the settlement agreement. The draft settlement agreement provides that the agreement shall "be governed by the and interpreted under the laws of the State of California."

6

4th 348, 358 (1998). The test of whether there is an enforceable oral agreement is:

> did the minds of the parties meet; that a proposal for a contract was made by one party and accepted by another; that the parties definitely understood and agreed upon the terms of the contract; and finally, that as a part of the mutual understanding it was agreed that a written contact embodying the terms agreed upon should be prepared and executed by the respective parties....Under such circumstances, neither party is at liberty to refuse to perform.

*Kreling v. Walsh*, 77 Cal. App. 2d 821, 834-35 (1947). "Whether the parties intended only to be bound upon the execution of a written, signed agreement is a factual issue." *Callie*, 829 F.2d 890-91. Where material facts concerning the existence or terms of an agreement to settle are in dispute, the Court must conduct an evidentiary hearing, if requested. *Callie*, 829 F.2d at 891.

Having read and reviewed the supporting documents, and considering oral arguments, the Court finds that no binding settlement agreement existed between the parties. Defendants provide no evidence to support the position that Mr. Roundtree agreed to be bound by the terms of the oral agreement absent a writing. Although there is an order from Judge Vadas indicating that this case settled in its entirety, the order provides no factual basis for that conclusion. The evidence provided by Ms. Milrod supports her contention that Mr. Roundtree understood that the proposed agreement would not be complete until it was reduced to a formal writing and signed. Mr Roundtree was not present during the settlement negotiations and the parties failed to memorialize the agreement in a writing or on the record. At no time did Ms. Milrod understand that she had authority to accept the terms of the settlement agreement on behalf of Mr. Roundtree. The Court cannot enforce a settlement if Mr. Roundtree agreed to review the terms in writing and, when he reviewed those terms, he rejected them. Under these facts, no enforceable settlement agreement existed.

## CONCLUSION

Accordingly, defendants' motion to enforce the settlement agreement is DENIED.

IT IS SO ORDERED.

**Dated:   March 23, 2009**           /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE